IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISLAND PEAK GROUP, LLC d/b/a | § | |
| TEXAS TAX PROTEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-3135-D |
| | § | |
| OWNWELL, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this Lanham Act action by plaintiff Island Peak Group, LLC d/b/a Texas Tax Protest ("TTP") against defendant Ownwell, Inc. ("Ownwell"), Ownwell moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion in part and denies it in part.

I

This lawsuit involves a dispute over Ownwell's advertising practices.[1] TTP and Ownwell are competitors in the property tax consulting market. Property tax consulting firms help property owners reduce their property tax liability in exchange for a percentage of the resulting savings. Property taxes are calculated by multiplying the value of the property as assessed by the taxing entity by the applicable tax rate. Property tax consulting

---

[1]The court recounts the background facts favorably to TTP as the nonmovant. In deciding a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

firms specialize in lowering the taxing entity's assessment of a property's value, which, in turn, lowers the property tax.

TTP alleges that Ownwell unfairly diverts business from TTP by basing their quotes on a tax rate that is considerably higher than the rate that applies to their property.[2] Property tax consulting firms quote prospective clients by predicting their savings if the consultant successfully challenges the taxing entity's assessment. Predicted savings are calculated by multiplying the difference between the taxing entity's predicted assessment and the consultant's assessment by the predicted tax rate. Thus Ownwell's stratagem of inflating the tax rate gives consumers an inflated sense of their predicted savings, and therefore the false impression that they can save more money transacting with Ownwell than with its competitors, which quote them according to a lower, more accurate predicted tax rate.[3]

TTP asserts federal-law claims against Ownwell for false advertising and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and a supplemental

---

[2]TTP also alleges other unfair advertising practices, but the court will focus on the property tax rate allegation because it is central to the court's ruling. *See infra* note 5.

[3]This practice is illustrated by the following hypothetical. Prospective customer PC solicits quotes from firms A and B. Both A and B predict that the taxing entity will assess PC's property value at $100, and both assess PC's property at $90. But, whereas A quotes the applicable tax rate of 10%, B quotes an inflated tax rate of 20%. A therefore quotes savings of $1 (($100 - $90) x 10%), and B quotes savings of $2 (($100 - $90) x 20%). As a result, PC is left with the false impression that it will save twice as much money transacting with B as compared to A. The impression is false because, when B actually appeals the taxing entity's assessment, the best-case scenario is that the taxing entity lowers the assessment to $90, the taxing entity applies the actual tax rate of 10%, and PC saves $1, which is precisely what it would save if it transacted with A.

state-law claim for unfair competition under Texas common law. Ownwell moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. TTP opposes the motion, which the court is deciding on the briefs, without oral argument.

II

The court turns initially to Ownwell's request that the court consider the contents of Ownwell's website, or, alternatively, consider certain screenshots of its website.

The court in its discretion declines Ownwell's request to consider its entire website on the basis that it is "attached" to Ownwell's motion to dismiss, referenced in the complaint, and central to TTP's claims. To the extent the Fifth Circuit tacitly endorses consideration of such materials, *see King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003), a district court may still decline to consider them when, as here, the attached materials would not "assist[] the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated," *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The present content of Ownwell's website is immaterial to TTP's allegations regarding the website's content at the time of the complaint, which are the focal point at the Rule 12(b)(6) dismissal stage.

But the court grants Ownwell's request to take judicial notice of the screenshots of its website that it has submitted, because the fact that those screenshots accurately depict

Ownwell's website at the time they were captured is not subject to reasonable dispute.[4] *See* Fed. R. Evid. 201; *see also HCL Techs. Ltd. v. Atos S.E.*, 2024 WL 1076821, at *3 (N.D. Tex. Jan. 31, 2024) (Horan, J.) ("Because Defendants have not contested the accuracy of the ATOS website screenshots, the Court should take judicial notice of the attached screenshots."), *rec. adopted*, 2024 WL 1094697 (N.D. Tex. Mar. 12, 2024) (Lindsay, J.). To the extent they are relevant, the court will consider the screenshots for purposes of deciding the instant motion to dismiss. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (explaining that district courts "must consider . . . matters of which a court may take judicial notice").

III

The court now turns to the merits and considers whether TTP has stated a Lanham Act false advertising claim on which relief can be granted.

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d

---

[4]The court declines TTP's request to order Ownwell to "archive the website," P. Resp. (ECF No. 24) ¶ 5, because TTP has not persuaded the court of the marginal utility of doing so.

191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

> The plaintiff must establish five elements to make out a *prima facie* case of false advertising under the Lanham Act: (1) A false or misleading statement of fact about a product; (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception was material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). The parties dispute whether TTP has plausibly pleaded the first and fifth elements.

A statement of fact is "false or misleading" if it is either literally untrue or capable of creating a false impression in the consuming public. *See id.*; *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 500 (5th Cir. 2000); *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:53 (5th ed. 2025). A plaintiff has been or is likely to be injured as a result of the statement at issue if it shows "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

C

Ownwell contends that TTP has not plausibly alleged that the tax rate that Ownwell quotes prospective customers is a false or misleading statement of fact.[5] Ownwell maintains that the tax rate that it uses is a variable figure that is determined by an algorithm. For example, whereas TTP alleges that Ownwell quotes consumers using a 2.5% tax rate for properties in Travis County, Texas, its algorithm currently applies a rate of 2.25%. Ownwell also posits that, in the context of the advertisements complained about, it is clear from certain disclaimers that "Ownwell is merely providing the 2.50% rate as an example of a possible

---

[5]The court in its discretion limits its analysis to Ownwell's alleged statement that the tax rate is 2.5%, although TTP alleges, and Ownwell disputes the falsity or misleading nature of, numerous other statements. The court does so because its conclusion that TTP has plausibly alleged that such statement was false or misleading is dispositive of Ownwell's motion to dismiss for failure to plead the first element. *See IQ Prods.*, 305 F.3d at 375. The court focuses on the tax rate statement in particular because TTP represents that it is "perhaps the most important example of Ownwell's false advertising." P. Resp. (ECF No. 23) at 7.

applicable rate, but that rate is not guaranteed to any consumer." D. Br. (ECF No. 13) at 10. And Ownwell contends that TTP has not plausibly alleged that it has been, or is likely to be, injured as a result of any of Ownwell's statements.

TTP responds that it has plausibly alleged that Ownwell's 2.5% rate is not an accurate figure that is generated by an algorithm, and the disclaimers are irrelevant because Ownwell's suggestion that the 2.5% rate is an "average" is still false or misleading. TTP also maintains that it has adequately alleged that Ownwell's false advertising caused TTP to suffer pecuniary harm, namely its loss of legacy clients to Ownwell.

D

The court concludes that TTP has plausibly alleged that Ownwell's use of a 2.5% tax rate in its advertising materials is a false or misleading statement of fact. The gravamen of Ownwell's argument is that, as a matter of law, its statement that the average or estimated tax rate for properties located in Travis County is 2.5% is not false or misleading. Although some circuits have suggested that, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception," *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam); *see also Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 200 (3d Cir. 2014), Ownwell's inclusion of language that the tax rate is an "average" or "estimate" is not so clarifying that, as a matter of law, Ownwell's use of that rate is not false or misleading. *See Dependable Sales & Serv., Inc. v. Truecar, Inc.*, 2016 WL 79992, at *5 (S.D.N.Y. Jan. 6, 2016) ("While a disclaimer may be so plain, clear and conspicuous as to bar a claim as a matter of law, this is not such a case."). To the

contrary, TTP alleges that "2.5% is not an accurate tax rate for most counties in Texas," Compl. (ECF No.1) ¶ 19; "the average tax rate for Travis County, Texas is approximately 1.85%" according to "tax records in that county," *id.* ¶ 20; and Ownwell's website elsewhere "states the 'average' tax rate for Travis County is 1.31%," *id.* Based on these allegations, accepted as true and viewed in the light most favorable to TTP, it is plausible that 2.5% is an exceptionally poor "average" or "estimate" of the tax rate applicable to Travis County property owners, and therefore capable of creating a false impression in those consumers about the savings that Ownwell could achieve for them.

E

The court also concludes that TTP has plausibly alleged that it has been or is likely to be injured as a result of Ownwell's false or misleading statements. TTP asserts that:

> [Ownwell's practices] result[] in a significant amount of customers signing up with Ownwell as opposed to its competitors, which include established and respected property tax consultants. And this results in competitive harm to Ownwell's competitors. . . . . As a result of Ownwell's practices—which include the instances of false advertising outlined above—Ownwell has been retained by numerous property owners in Texas, to the exclusion of its competitors. In addition, providers such as Plaintiff have lost legacy clients to Ownwell.

*Id.* ¶¶ 23, 27. Although arguably only borderline adequate, these allegations enable the court to draw the reasonable inference that TTP has suffered economic injury flowing directly from Ownwell's advertising because it deceives consumers into withholding trade from TTP. *See Lexmark Int'l*, 572 U.S. at 133.

Accordingly, the court concludes that TTP has stated a Lanham Act claim on which relief can be granted and denies Ownwell's motion to dismiss in this respect.

IV

The court turns now to TTP's unfair competition claims under the Lanham Act and Texas common law. The court declines to dismiss TTP's common-law unfair competition claim, which is based on the same allegations as TTP's Lanham Act false advertising claim, and which Ownwell challenges on the same grounds that the court has rejected *supra*. *See Healthpoint, Ltd. v. Allen Pharm., LLC*, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008). But the court dismisses TTP's Lanham Act unfair competition claim, which appears to have been abandoned. *See e.g.*, *Jones v. Dallas Cnty.*, 47 F.Supp.3d 469, 495 (N.D. Tex. 2014) (Fitzwater, J.); *see also McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir.), *cert. denied*, 144 S. Ct. 348 (2024).

\* \* \*

For the reasons explained, the court grants in part and denies in part Ownwell's March 11, 2025 motion to dismiss. TTP's Lanham Act unfair competition claim is dismissed with prejudice.

**SO ORDERED**.

June 10, 2025.

                                           SIDNEY A. FITZWATER
                                           SENIOR JUDGE